IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **United States of America**<br>Plaintiff<br><br>v.<br><br>**Felix Abreu Echevarria**<br>Defendant | Criminal No. **16-783-GAG**<br><br>Illegal Reentry |

SENTENCING MEMORANDUM

**TO THE HONORABLE COURT:**

**COMES NOW defendant** through the undersigned counsel and most respectfully **STATES AND PRAYS** as follows:

INTRODUCTION

"After one has been in prison, it is the small things that one appreciates: being able to take a walk whenever one wants, going into a shop and buying a newspaper, speaking or choosing to remain silent. The simple act of being able to control one's person."

**By Nelson Mandela**

Mr. Félix Abreu is a man that after being in prison and deported, desired to be with his sons and wife. His passions and faith were here, in Puerto Rico. His own flesh and blood's pains and sufferings so near, yet a world apart. So he violated federal law in a desperate attempt to help them. He regrets it now with his own blood and tears.

1

The Amended PSR includes many references that tug and wrench at the heart, dealing with defendant's two sons, and his married wife. This alone is uncommon: a married man with a history of work, church participation, community ties and deep faith. Then the story of the misery and literal downfall of his two sons after his deportation. A wife trapped by the duty to take care of an ailing father, alone, in a depressed economy and herself suffering. She is being both mother and father without any hope to have her husband with her in this island. Her only hope now is his prompt deportation and her removal to live with him in the Dominican Republic.

These are verified facts that come as the aftermath of a deportation. They also explain, though they cannot justify, the thwarted attempt by Mr. Abreu to illegally re-enter in order to help those he loved.

The following are the critical sec. 3553 factors the Honorable Court should consider when sentencing this man.

COP WITHOUT A PLEA AGREEMENT MERITS CONSIDERATION

1. Since his arrest in December 6, 2016, and up to his sentencing day of August 15, Mr. Abreu will have been incarcerated a total of 8 mos. and 10 days.
2. He has been incarcerated in MDC Guaynabo, Puerto Rico, Puerto Rico Correctional Institutes Bayamon 705 and Deyton-ATL, a GEO private institution.

3. According to the PSR, dkt. 32, page 13, that stay will have cost the USA around $25,000.00. Not including the cost of air passage, bus transports and medical attention for medications and eyeglasses, the amount could well be over $30,000.00 for a single count of illegal re-entry. That is already a lot of money and effort to punish this man.

4. According to the report, pages 4-5, he has fully recognized his criminal behavior and has been a model inmate wherever he has been held.

5. He decided to file a change of plea, COP, without a plea agreement, on April 17, 2017. He is a fundamentally good man, a religious man, and a simple, hardened and suffering father. He showed his two sons that he accepted his responsibility, and that the path for his family lays in being together in his native home land.

6. He knowingly recognized that his imperative in life was to serve the time for this re-entry and go back to fight for his family's well-being and health. He trusts in God and in the justice of this Honorable Court to recognize his faults. He begs that the court will find that the more than 8 months served in what for him has been a haphazard, come and go way, is not more than enough but a fair and just measure of what the gravity of a single re-entry count deserves as punishment.

## CHC CALCULATION OVERSTATES HIS CRIMINAL HISTORY

7. On pages 7 and 8 of the PSR there is a note including application of USSG 1 Nov. 2016 sections 2L1.2 (b) (3) (B) and 4A1.2 (a) (2).

8. Par. 34 on page 7 refers to state charges that were reclassified in part to misdemeanor charges; the other count was reclassified as a **4th degree** felony. The charges for which he receives 3 CHC points were sentenced **the same day, on 2/23/2012**. Therefore, under 4A1.2 (a) (2), it should be counted as a single sentence.

9. He gets a total of 3 Criminal History category (CHC) points. Other charges related in page 8 were dismissed.

10. Is a fourth degree felony a qualified offense that allows the officer to apply the enhancement in 2L1.2 (b) (3) (B) and 4A1.2 (a) (2)?

11. Under 4A1.2 (a) (2), it is a single sentence that gets CHC points.

12. Under 2L1.2 (b) (3) (B), his sentence of two (2) years increases his BOL of 8 by 8 additional points, less tow (2) for accepting responsibility, so he has a TOL of 14. The guideline sentencing range is between 18-24 months.

13. Nevertheless, upon reviewing the **application notes for 2L1.2 (b) (3) (B), note 5**, we understand that there are grounds for a departure. The reason is that, allowed in the application note 5, Mr. Abreu did not serve the sentence of two years that was imposed.

14. INSTEAD, as included in the PSR at page 5, after his sentence dated February 23, 2012, we know he COMPLETED his sentence on February 22, 2013, a little over a year after he started. Therefore, he served only half of his sentence, or less than ONE YEAR.

15. If we were to look at 2L1.2 (b) (3) with this information, and applying the guidelines to this time served, starting 23 February 2012 and ending 21 February 2013, we learn he only served 11 months and 30 days, including the end date. For that time served, the applicable section would be

**"2L1.2 (B) (3) (D): a conviction for any other felony offense (other than illegal re-entry), increase 4 levels"**

16. Therefore, the guideline range sentence would be based on a BOL of 8, plus 4 under 2L1.2 (B) (3) (D), minus 2 for acceptance of responsibility, for a TOL of 10, with a *GSR of 8-14 months for CHC 2, 3 criminal history points*.

WHY DEPART DOWNEARD?

17. The state of Puerto Rico decided Mr. Abreu merited reclassification of charges to misdemeanors and 4th class felony; then, the Department of Corrections released him after *serving less than a year*. He was deported soon after that.

18. When the application note 5 advises us to request a downward departure based on the merits of the lesser time served it is allowing for the argument that this man, a good man who clearly served time for his criminal behavior,

5

would be overserving time for this illegal re-entry if the enhancement is applied without consideration of note 5.

19. The PSR narrates the story of a family suffering immensely, a family torn apart by the mistakes of the father, both past and present. Pages 9-11 talk about an illiterate man, a hardworking man, a good father and a good husband.

20. Ms. Cofresi received no less than fourteen (14) letters, including a letter from a pastor, detailing his profound community ties, his self-less and devoted work helping others and his devoted wife and two young male children's wrenching description of Mr. Abreu as a good man. This man is clearly loved by those who know him.

21. The Officer also has hundreds of pages relating to the issues suffered and experienced by the two sons at school and at home, all derived from the trauma of having his father deported and now arrested after illegal re-entry.

22. Pastor Sonia Lugo, of Iglesia Casa de Oracion Vaso de Barro, Inc., details that Abreu helped build the temple, all for free, and generously. This alone sets him very far apart from most criminal defendants before the Honorable Court.

23. His wife Rosalina is planning to move to the Dominican Republic (DR) as the step to bring the family together: she is unable to provide care for the boys, for herself and her now bedridden father without her husband's help.

24. Mr. Abreu has relatives that support him in the DR, like his mother and his extended family. His wife, as a trained practical nursing staff, can certainly work in that country. The sheer willpower to reunite the family is now focused on the DR, not here in Puerto Rico where so much pain and suffering due to the separation of the parents have caused severe medical conditions on the sons.

25. Rosalina is willing to testify to the court that she intends to move sons, father and self to the DR to be with her husband. This is not a vapid, empty proposal: it is the voice of love and reason looking over the horizon to unite and heal this torn family unit.

## CONCLUSION

26. All these facts, taken together with note 5, merit that his court consider adopting our analysis in pars. 14-18, and in the absence of a plea agreement, impose a sentence of 8 months at the lower end of the GSR, that inevitably means he should be sentenced to **TIME SERVED**.

**WHEREFORE**, we most respectfully request this Honorable Court to SENTENCE Felix Abreu and his family to a sentence of 8 months, or TIME SERVED as of August 15, 2017.

**CERTIFICATE OF SERVICE:** I HEREBY CERTIFY THAT ON THIS DATE I HAVE FILED THE FOREGOING WITH THE CLERK OF THE COURT USING *CM/ECF* WHICH WILL SEND NOTIFICATIONS OF SUCH FILINGS TO ALL PARTIES IN INTEREST IN THIS CASE.

**RESPECTFULLY SUBMITTED** ON THIS 10 August 2017, IN SAN JUAN, PUERTO RICO.

<u>**S/ Julie Soderlund**</u>
Julie Soderlund, MBA

**USDC-PR 210205**
PO Box 367761
San Juan, P.R. 00936-7761

[soderlund.law@gmail.com](mailto:soderlund.law@gmail.com)
**Tel.** 787-721-6880